STATE OF NORTH CAROLINA, Ex Rel. UTILITIES COMMISSION, v. CAROLINA SCENIC COACH COMPANY.

(Filed 9 October, 1940.)

**1. Utilities Commission § 4—**

Petitioner has the right to appeal to the Superior Court from the denial of its petition for the removal from its franchise of a restriction prohibiting it from transporting passengers between two cities along its route in purely local traffic between the said cities. C. S., 1097.

**2. Same—Petitioner's exceptions held to raise issues of fact, and appeal was properly transferred to civil issue docket for trial by jury.**

Petitioner filed petition requesting the removal from its franchise of a restriction prohibiting it from transporting passengers between two cities

along its route in purely local traffic between the said cities. The Utilities Commissioner denied the petition upon his findings, among others, that the' present service between the two cities furnished by another carrier is ample, that there was no necessity for permitting petitioner to furnish service between the two cities, and that the removal of the restriction was not demanded by the public interest. *Held:* The exceptions raise issues of fact to be determined by a jury, a high degree of formality in separating findings and conclusions of fact from conclusions of law not being required, and the appeal was properly transferred to the civil issue docket and tried before a jury. Michie's Code, 1097, 1098.

**3. Same—**

On appeal from the denial of a petition to remove certain restrictions from petitioner's franchise, the point at issue is the removal of such restrictions, upon the attendant facts; and exceptions to the commissioner's findings upon which his order is predicated raise issues of fact for the determination of the jury.

**4. Utilities Commission § 1—**

The Utilities Commission is a State administrative agency of original and final jurisdiction, and its orders require no confirmation by any court to be effective.

**5. Utilities Commission § 4—**

Appeals from the Utilities Commissioner are analogous to appeals from a justice of the peace rather than appeals from a referee, and since the trial in the Superior Court is *de novo* upon issues of fact raised by the exceptions, the Superior Court properly refuses to pass upon appellant's exceptions to the findings of fact *seriatim.*

**6. Same—**

The provision of statute that the decision of the Utilities Commissioner shall be deemed *prima facie* just and reasonable, Michie's Code, sec. 1098, merely raises a presumption of law, and places the burden of going forward with the proof upon the party appealing from the decision, but even if the statute should be construed to raise a presumption of fact, an instruction that the findings and decision of the commissioner were *prima facie* just and reasonable gives appellee the benefit of a presumption of fact when the evidence fully apprises the jury of the substance and purport of the order.

**7. Same—Upon appeal from the denial of a petition the question for decision is whether petitioner is entitled to the relief sought.**

Petitioner filed petition requesting the removal from its franchise of a restriction prohibiting it from transporting passengers between two cities along its route in purely local traffic between said cities. Upon appeal to the Superior Court from the denial of the petition, the carrier intervening and opposing the granting of the petition, objected to the refusal of the court to submit an issue as to whether the public interest demanded additional transportation facilities between the two cities and objected to the submission of the issue as to whether the public convenience and necessity required the removal of the restriction from the petitioner's franchise, contending that the sole question within the Superior Court's jurisdiction was whether the public convenience and necessity required

additional service, and that upon an affirmative finding to this issue in the Superior Court the matter should be remanded to the commissioner in order that he might select the person or corporation to which he would award the franchise for such additional service. *Held:* The question for decision in the Superior Court upon appeal is whether petitioner should be given the relief prayed and not whether the commissioner should be sustained in his ruling, and the Superior Court has jurisdiction to determine the matter and grant the relief prayed for upon an affirmative finding by the jury upon the issue submitted.

**8. Courts § 1—**

The Superior Court is a court of final jurisdiction and has power to completely determine a controversy properly before it, and its judgment is final as to all matters of fact established in accordance with procedure and is subject to appeal and review only on matters of law. Const. of N. C., Art. IV, sec. 12; C. S., 1439, 639.

**9. Constitutional Law § 4d—**

The distribution and allotment of the powers of government to existing agencies or those created by statute is the function of the legislative branch of the Government, and the courts have no power to interfere therewith as long as the General Assembly acts within constitutional limitations.

STACY, C. J., dissenting.

BARNHILL and WINBORNE, JJ., concur in dissent.

APPEAL by Atlantic Greyhound Corporation from *Armstrong, J.*, at April-May Term, 1940, of HENDERSON. No error.

This proceeding originated before the Commissioner of Public Utilities by petition of the plaintiff for a removal of certain restrictions provided in its franchise for operating a passenger motor vehicle between points south of the North Carolina State Line and Asheville, North Carolina, within said State.

The franchise referred to was obtained 10 July, 1933, for the operation of motor vehicles from the South Carolina Line south of Hendersonville, through Hendersonville *via* Mills River Section, to Asheville, North Carolina. In this franchise the petitioner was prohibited from taking on passengers in Hendersonville destined to Asheville, and from taking on passengers in Asheville destined to Hendersonville.

The petition sets up that the population, respectively, of Hendersonville and Asheville, had greatly increased since the granting of the franchise; that both cities were popular resort cities in a mountainous portion of the State much resorted to for its scenic beauty; and that during the summer months the population of both cities was vastly increased.

It was further alleged that the schedule adopted and followed by the only other franchise carrier operating between these cities did not afford sufficient facilities for passengers either way between the city of Hender-

sonville and the city of Asheville; that a large part of the population was denied facilities of transportation between the two points, according to any schedule to which they might conform without great disadvantage and inconvenience to themselves. The petition further pointed out that generally the traveling public has become accustomed to more immediate and better transportation facilities, which resulted in those thus denied them raising a clamor, and producing a strong pressure to be taken on petitioner's cars, which petitioner with difficulty resisted.

The petition pointed out that there was a great necessity for improvement in such conditions, which might be easily met by the facilities at the command of the petitioner, but which petitioner was not allowed to furnish because of the restrictions imposed upon it in its franchise. Petitioner prayed that these restrictions be removed and that it be permitted to take on passengers at the designated points, going to either city.

The matter came to a hearing before the Honorable Stanley Winborne, Utilities Commissioner, in the city of Raleigh, on 31 August, 1938. The record discloses that at that time counsel appeared for the petitioner, Carolina Scenic Coach Company, and also for "the protestant," Atlantic Greyhound Corporation. We assume that the Atlantic Greyhound Corporation, operating motor vehicles between the cities mentioned, had been permitted to intervene and to protest the granting of the relief prayed for by the petitioner.

At this hearing the Commissioner found certain facts, amongst them that the schedules maintained by the Atlantic Greyhound Corporation afforded sufficient facilities for the traveling public over the route designated, and that no further service was needed; and that if any further service was needed the Atlantic Greyhound Corporation was ready, willing, and able to provide the service. Upon what evidence the latter finding was made does not appear in the record.

The Commissioner denied the prayer of the petitioner, and the petitioner appealed to the Superior Court, setting up certain exceptions both to the order of the Commissioner and to the findings of fact upon which it was predicated, and to the conclusions of law reached by the Commissioner, amongst them that the removal of the restriction was not in the public interest. These were overruled.

Following the statute, the Commissioner made up the appeal, or report, and forwarded the same to the Superior Court of Henderson County.

After the matter had been docketed in the Superior Court, the protestant, Atlantic Greyhound Corporation, claiming to do so as a result of notice duly and properly given it by the Utilities Commission, appeared and filed a written motion to have the appeal dismissed, upon several grounds: First, because the Utilities Commission had no authority to

entertain the petition, or enter an order removing the restriction; and, second, because "no appeal lies to the Superior Court from an order denying the prayer of the petitioner." This motion was allowed by Judge Rousseau at the May-June Term, 1939, of Henderson Superior Court, to which the appeal had been certified, in an order dismissing the appeal, and the petitioner appealed to the Supreme Court. Upon the hearing in the Supreme Court, the judgment of Rousseau, J., was reversed. The case is reported as *Utilities Commission v. Coach Co.,* 216 N. C., 325.

Before the introduction of evidence at the trial with which the present appeal is concerned, the Utilities Commission and the Atlantic Greyhound Corporation filed a written motion "that the appeal be heard by the presiding judge in chambers, under the provisions of section 1097, C. S., for that the petitioner has not excepted to any findings of fact in the order of the Utilities Commissioner of the State of North Carolina, from which the petitioner appealed." This motion was denied and both the Utilities Commission and the Atlantic Greyhound Corporation excepted.

The trial was *de novo* and much evidence was introduced regarding the necessity for the service contended for by the petitioner, as bearing upon the propriety, reasonableness, and necessity of removing the restrictions placed upon the petitioner, which prohibited it from taking on and carrying passengers from Hendersonville to Asheville and from Asheville to Hendersonville, points in its route, covered by a schedule represented as convenient and necessary to meet the reasonable demands of passenger traffic and travel between these points. There was evidence *contra* on the part of the protestant.

The Utilities Commission and the protestant, Atlantic Greyhound Corporation, tendered the following issue: "Does public convenience and necessity require additional intrastate service by bus between Hendersonville and that part of Asheville east of the French Broad River? Answer: ... ............." The court refused to submit this issue and the Utilities Commission and the Atlantic Greyhound Corporation excepted.

The court submitted the following issue: "Does public convenience and necessity require additional intrastate service by bus between Hendersonville and Asheville by the removal of the restrictions in the petitioner, Carolina Scenic Coach Company's franchise, as alleged in the petition? Answer ................." Both the Utilities Commission and the Atlantic Greyhound Corporation objected and excepted.

The jury answered the issue submitted by the court "Yes," and, thereupon, judgment was entered ordering that the restrictions placed upon petitioner's franchise be removed, and that it be permitted to accept passengers at Hendersonville and at Asheville and transport them

between these cities. From this judgment the Utilities Commission and the Atlantic Greyhound Corporation appealed. The Utilities Commission, however, did not perfect its appeal and is not a party here.

There were numerous exceptions on the part of the Utilities Commission and the protestant to the instructions given to the jury. They are not reproduced here in detail, because their discussion is not essential to the decision.

In addition to the exceptions noted, the trial judge was requested by the Utilities Commission and the Atlantic Greyhound Corporation to review the exceptions taken to the findings and conclusions of the Utilities Commissioner and pass upon them *seriatim,* which the court refused to do. This resulted in numerous exceptions by the Utilities Commission and the Atlantic Greyhound Corporation, alike in purport, and addressed to this phase of the case.

*I. M. Bailey, H. G. Hudson, and L. B. Prince for Atlantic Greyhound Corporation, appellant.*

*M. M. Redden, J. W. Pless, Sr., and C. D. Weeks for Carolina Scenic Coach Company, appellee.*

SEAWELL, J. As appears from the foregoing statement, this case came here at the Fall Term, 1939, upon an appeal from an order dismissing the plaintiff's appeal to the Superior Court, upon the contention by the Utilities Commission and the Atlantic Greyhound Corporation that no appeal lay from the order of the Utilities Commissioner. The court was of the contrary opinion, holding that such an appeal was proper under the express wording of the statute, cited by appellant in the case at bar—C. S., 1097; Michie's 1935 Code: "From all decisions or determinations made by the Utilities Commission, any party affected thereby shall be entitled to appeal." Also by virtue of chapter 134, Public Laws of 1933, section 12, providing that the Utilities Commissioner and his Associate Commissioners "shall hear and determine such matter, thing, or controversy in dispute, pass upon and determine the issues of fact raised thereon, and the questions of law involved therein, and make and enter their findings and conclusions thereon as the judgment of the said Utilities Commissioner of North Carolina. *From the decision of the said Utilities Commissioner, or the said Utilities Commission, any party to said proceeding may appeal to the Superior Court at term, as designated in and under the procedure required by sections 1097, 1098, 1099, 1100, 1101, and 1102, Consolidated Statutes,"* etc.

The principal questions raised here may be summarized: The appellant no longer questions the right of appeal, but contends that the appeal in the instant case is upon matters of law altogether, and should have

been decided by the judge without intervention of a jury; that it was the duty of the judge to pass upon all of petitioner's exceptions separately, and rule upon each of them, as in the practice relating to the reports of referees; that if the matter was triable at all before the jury, the sole question to be determined by the jury was whether or not convenience and necessity required the additional public service which petitioner had pointed out, and that if the affirmative was made to appear by the verdict of the jury, the whole matter should be returned to the jurisdiction of the Utilities Commissioner for him to award the franchise for such service to such person or corporation as he might deem best. Section 1098, Michie's Code.

We do not think the contention of the appellant that no question or issue of fact was raised by the petitioner's exceptions to the findings and conclusions, and to the order of the Utilities Commissioner, can be sustained. While it may be true that the exceptions confuse findings and conclusions of fact with conclusions of law, the findings and conclusions of the Utilities Commissioner are also informal. Petitioner seems to have made a fairly good pattern on the target presented to it. Indeed, in common practice it is often difficult to separate conclusions of fact from conclusions of law. The statute, however, does not require any high degree of formality in this respect, and it is not the practice of this Court to allow mere form to defeat substantial justice, or to disregard pertinent matter for want of proper labeling.

A fair analysis and comparison of the Commissioner's findings and petitioner's exceptions does show that the Commissioner found that the present service rendered by the Atlantic Greyhound Corporation is ample, and that there was no necessity for the service pointed out in the petition, and that the removal of the restrictions from petitioner's franchise was not demanded by the public interest. (We omit matters of inducement and argument leading up to the decision.) The exceptions are sufficient to challenge these findings and, as required by the statute, petitioner directly excepted to the order.

We are not inadvertent to the argument that the reasonableness of the Commissioner's order is the real point at issue, and that this should be regarded and determined as a question of law. The question of reasonableness, in its relation to the relief demanded by petitioner, depends upon the factual situation developed in the *de novo* trial in the Superior Court, and must be independently considered.

In view of the broad language of the statute—sections 1097-1098, Michie's Code—we are unable, on principle, to distinguish the particular exercise of power here challenged from those which, under precedents established respecting agencies to which the Utilities Commission is successor in jurisdiction and function, were held appealable and referable

to jury trial. *Corporation Commission v. R. R.,* 140 N. C., 239, 52 S. E., 941; *S. v. R. R.,* 161 N. C., 270, 76 S. E., 554; *R. R. Connection Case,* 137 N. C., 1, 49 S. E., 191, 206 U. S., 1, 17, 51 L. Ed., 933; *S. v. R. R.,* 145 N. C., 495, 59 S. E., 570; *Corporation Commission v. R. R.,* 185 N. C., 435, 117 S. E., 563; *Corporation Commission v. Water Co.,* 190 N. C., 70, 128 S. E., 465; *Corporation Commission v. R. R.,* 197 N. C., 699, 150 S. E., 335. The case was, therefore, properly placed upon the civil issue docket and tried before a jury. Sections 1097-1098, Michie's Code.

The exceptions of the protestant, for that the trial judge did not take up the exceptions of the petitioner and rule upon them *seriatim,* after the practice relating to a referee's report, are untenable. Those exceptions were probably taken in support of the contention that the appeal presented only questions of law. But they involve also the suggestion that the Utilities Commissioner had acted upon some derivative authority, and that his action required confirmation by the court, or some other body, to make it effectual.

The Utilities Commission, or the Utilities Commissioner, with whose order we are concerned, is a State administrative agency of original and final jurisdiction (subject to appeal), and the findings and orders of the Commissioner require no confirmation by any court or other body as they do in the case of a referee. He has no more power to make a reservation of his jurisdiction upon an appeal than the Superior Court has to recognize it, and, in fact, he made none. The statute makes none for him.

Of more significance is the fact that upon appeal the whole matter is heard *de novo,* and any competent evidence bearing upon the controversy may be heard, regardless of the proceeding before the Commissioner. Issues to which the trial court must look forward have relation both to the pleadings and to the evidence; *Clinard v. Kernersville,* 217 N. C., 686; *Coletrane v. Laughlin,* 157 N. C., 282, 72 S. E., 961; and the ruling of the court separately upon exceptions taken to findings of fact by the Commissioner on evidence presented to him, on a totally different and superseded hearing, would not only be futile but erroneous. The question before the Court is not whether the Commissioner shall be sustained in his ruling, but whether the petitioner shall be given the relief prayed for, upon the facts as they are developed *de novo* in the Superior Court. The proceeding on appeal and the subsequent hearing is more analogous to that from a justice of the peace, at least where issues of fact are involved, as we find them to be here, leaving to the appellate court the unconditioned jurisdiction to find and declare the truth, through its own established procedure.

We think the "protestant" had full benefit of the instruction to the jury that the findings and decision of the Utilities Commissioner were *prima facie* just and reasonable, and the evidence was such as to fully apprise the jury of the substance and purport of the order. We see no harm which could come to appellant from this source.

The language used in section 1098 is quite different from section 16 of the Federal Act to regulate commerce (see Act of 4 February, 1887, and amendments), considered in *Meeker v. Lehigh Valley Railroad Co.,* 236 U. S., 412, 430, 59 L. Ed., 644. The latter provides that the "findings and order of the Commissioner shall be *prima facie* evidence of the facts therein stated." The statute here considered provides only that the "rates fixed, or the decision or determination made by the Commissioner, shall be *prima facie* just and reasonable." It makes no mention of the use either of the findings or of the determination made by the Commissioner as evidence in the cause. Even if it did, we fail to find error in the trial on this exception. We think the provision that the determination of the Commissioner should be *prima facie* just and reasonable is of the nature of a legal presumption, which requires only that the petitioner must introduce substantial evidence in support of his case, or run the risk of an adverse verdict. It serves also to put the "laboring oar"—the duty of going forward with the evidence—in the hands of the real "actor," the petitioner, since in the statute the natural position of plaintiff and defendant is reversed, and the State, on relation of the Utilities Commission, is made formal plaintiff. But if there should be created by this statute a situation by which a presumption of fact remains with the jury until their final action, appellant had full benefit of that view. *Gallup v. Rozier,* 172 N. C., 283, 90 S. E., 209.

Both in appellant's oral argument and in the brief it is urged that the sole question to be determined by the jury, if the case got that far, was that of convenience and necessity involved in the additional service suggested—an abstract question to which the litigant parties might or might not have some relation upon some subsequent hearing before the Commissioner after the jury had reached its verdict. A rather poor compensation this, for the trouble taken by the petitioner and the expense to which it has been put, under encouragement of the statute, which, presumably, and we think on its face, gives it the right to appeal, not *pro bono publico,* or to the ultimate advantage of its adversary, but in its own individual interest.

In this State the right of appeal exists only by statute, and neither the litigant parties nor the court itself may take any step that is not authorized by the statute, or a fair inference therefrom. The Superior Court, to which appeals from the orders of the Utilities Commission lie, has its own well understood legal incidents. It is a court of final juris-

diction and of final resort on matters of fact and, subject to appeal and review on matters of law, its decisions are completely determinative of the controversy properly before it, and its judgments apply both .to the subject matter and to the parties of record and their privies. Constitution of North Carolina, Article IV, section 12; C. S., 1439; C. S., 638; *Rhyne v. Lipscombe,* 122 N. C., 650, 29 S. E., 57; *Coletrane v. Laughlin, supra; Armfield v. Moore,* 44 N. C., 157.

There is no provision in the general law nor in the specially applicable statutes by which the Superior Court could be justified in segregating the question of convenience and necessity, or divorcing it from its relation to the litigant parties, and making of it a floating island to be subsequently captured by the Utilities Commission. Such procedure would make the Superior Court an adjunct to the administrative body, or an intermediate agency in the proceeding before it, so that the verdict of its juries and its judgments might be subordinated to the Utilities Commission for its subsequent final action. For this there is neither law nor precedent.

If petitioner's application could be considered as an original application for a certificate of convenience and necessity, which we doubt, and if upon the hearing the Utilities Commissioner had affirmatively found necessity for the service, he might have awarded the franchise to one party or another, as in his judgment might be best in the public interest. But the Commissioner found to the contrary, and, as the statute permits, actively presented this view in the Appellate Court. The verdict of the jury was adverse to his contention. The question had then become incidental to the rights of petitioner upon its appeal, and had become merged therein. The real question before the board, and before the court, from beginning to end, was whether or not the restrictions ought to be removed from petitioner's franchise in the interest of the public service required. This question was properly heard according to the statute, and the practice of the court, and the verdict and judgment thereupon is final.

In view of the fact that the Utilities Commission has abandoned its appeal and no longer defends its jurisdiction in this respect, if it had any, we question the right of the protestant appellant to bring forward this question on appeal, since it has only a moral probability, no legal assurance, that it may be selected to perform the public service which it has consistently denied to be necessary.

On our construction of the law regulating appeals from the Utilities Commissioner, many of the arguments addressed to the Court raise questions that are political rather than juridical. We have no power to interfere with the Legislature in its distribution and allotment of the powers of government to agencies already created—as, for instance, a

jury—or those created by it, so long as it acts within constitutional limitations.

Other exceptions of appellant have been considered. Some of them are incidentally involved in the foregoing discussion. Others we do not consider of sufficient merit to justify us in disturbing the result reached in this case.

We find

No error.

STACY, C. J., dissenting: The right of the petitioner to appeal from the decision or determination of the Utilities Commissioner, in the circumstances disclosed by the record, was affirmed at the Fall Term, 1939, 216 N. C., 325. This is now "water over the dam." Our present concern is with the procedure in the Superior Court on such appeal—not perforce with what the procedure should be generally, but with what it ought to be on the record in this case.

It is provided by C. S., 1097 and 1098, that on exceptions to the facts as found by the Commissioner, if overruled and appeal taken therefrom, the appeal "shall be to the Superior Court in term" and there placed on the civil issue docket for preferential trial. *Corp. Com. v. Mfg. Co.,* 185 N. C., 17, 116 S. E., 178; *S. v. R. R.,* 161 N. C., 270, 76 S. E., 554. But if there be no exceptions to any facts as found by the Commissioner, the appeal "shall be heard by the judge at chambers at some place in the district." The manner of hearing the appeal, then, whether at term or in chambers, is to be determined by the character of the exceptions filed. It is further provided that by consent of all the parties, "the appeal" may be heard and determined at chambers before any judge of a district through or into which the line may extend, or any judge holding court therein, or in which the person or company does business. C. S., 1099. Obviously, the appeal is to conform to the statutes granting the right and regulating the procedure. See 2 N. C. L., 69, for valuable discussion of the subject, and McIntosh on Procedure, 819.

Conceding that the exceptions in the instant case may be sufficient to raise an issue of fact—though this is seriously challenged by the appellant—it does not follow that the Superior Court was thereby empowered to go beyond the case as presented to the Utilities Commission, and enter an order which in effect amounts to the issuance by the court of a franchise certificate which the Commission has never had an opportunity to consider, on the facts as finally determined, and withhold or grant as the statute provides. The court is confined to its derivative jurisdiction. *Corp. Com. v. R. R.,* 196 N. C., 190, 145 S. E., 19.

The following applicable provision of The Bus Law, Michie's Code of 1939, sec. 2613 (1), subsection (f), is especially significant in the case:

"The commission may refuse to grant any application for a franchise certificate where the granting of such application would duplicate, in whole or in part, a previously authorized similar class of service, unless it is shown to the satisfaction of the commission that the existing operations are not providing sufficient service to reasonably meet the public convenience and necessity and the existing operators, after thirty days' notice, fail to provide the service required by the commission."

It appears from the record that the granting of plaintiff's request will result in a duplication of bus service between Hendersonville and Asheville. The Utilities Commissioner found that such additional service was not necessary. But even upon a contrary finding, either by the Commission or by the court, it is still a matter for the Commission to determine, within the terms of the statute, how and by whom the additional service shall be performed. This is the clear meaning and intent of the enactment.

It follows, therefore, that the issue submitted to the jury was in excess of the matters presented by the exceptions to the *facts* as found by the Commissioner. Upon the finding that "public convenience and necessity require additional intrastate service by bus between Hendersonville and Asheville," the cause should have been remanded to the Utilities Commission for further proceedings as to justice appertains and the rights of the parties may require. Such procedure fully accords with the purpose of the General Assembly as expressed in the statutes on the subject. See concluding paragraph of opinion in *Service Co. v. Power Co.,* 179 N. C., 330, 102 S. E., 625.

It is not to be overlooked that we are considering the regulation of a public service, which is primarily an administrative matter. The court's jurisdiction in the premises is neither original nor wholly judicial in character. *Corp. Com. v. R. R.,* 151 N. C., 447, 66 S. E., 427; *Prentis v. R. R.,* 211 U. S., 210. As a consequence, in assuming to act with finality in the circumstances, the authority of the Commission has been cut short and the rights of the appellant disregarded. The "thirty days' notice" provision of the statute seems to have been ignored or treated as if it were not there. The administrative features of the law are not to be set at nought by an appeal to the Superior Court. *R. R. Com. v. Oil Co.,* 310 U. S., 573.

To the Utilities Commission, and not to the court, has been committed the duty of selecting the operator in a case like the present which involves a duplication of service. At least the initial selection is to be made by the Commission. The authority to make this selection in the first instance is nowhere vested in the court. Its jurisdiction is entirely derivative. Indeed, it may be doubted whether the statute contemplates

any appeal from such selection except for arbitrariness or abuse of discretion.  At any rate, there was error in the issue submitted and in the judgment rendered on the verdict.

BARNHILL and WINBORNE, JJ., concur in dissent.