STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION v. D. J. COLTER AND W. E. CHAPPELL, T/A WINSTON-SALEM BONDED WAREHOUSE AND TRUCKING TERMINAL.

(Filed 17 April 1963.)

**1. Carriers §§ 3, 4—**

The approval of the Utilities Commission of the transfer of a carrier's certificate of authority implies the duty on the part of the transferee to render the service called for in the certificate, which it must perform in a substantial manner.

**2. Utilities Commission § 9—**

Findings of fact of the Utilities Commission are binding on appeal if supported by substantial evidence, and its orders are presumed to be valid.

**3. Carriers § 3—**

   A finding of the Utilities Commission to the effect that the purchaser of operating rights to transport household goods under common carrier certificate did not exercise such rights for more than two years after the approval of the transfer of the certificate by the Commission, *held* to support the Commission's conclusion that, since rights under the certificate had become lost or dormant, the transferee had no rights thereunder which it could sell, regardless of the question of public convenience and necessity.

APPEAL by protestants from *Gambill, J.*, September 24, 1962 Regular Civil Term, FORSYTH Superior Court.

This proceeding originated before the North Carolina Utilities Commission. On February 15, 1962, the Winston-Salem Bonded Warehouse and Trucking Terminal (a partnership) and Myers Lumber and Trucking Company, by petitions, requested the Commission to approve a sale by Myers to the Warehouse of the operating rights to transport household goods under common carrier certificate No. C-716. The agreed price was $2,200.00.

South Atlantic Bonded Warehouse and six other common carriers of household goods intervened and filed protests to the proposed sale and transfer of the operating authority. Five of these protestants are located in Winston-Salem and two in Greensboro. They alleged the operating certificate had become dormant by reason of the utter failure of Myers Lumber Company ever to operate under the authority or to procure any suitable equipment to do so after it received the certificate by transfer from Bumgarner and Hall on February 9, 1960. The protestants alleged Myers was engaged in hauling lumber and not equipped to haul, and not engaged in hauling household goods. The protestants contended the transfer would amount to a new operating authority in a field which was adequately served by the protestants and that no public need existed for such authority.

After hearing, the Commission, among other findings, made the following:

   "3. That petitioner Myers has been in the business of hauling lumber for the past several years; that when petitioner Myers acquired the operating rights heretofore referred to from Bumgarner-Hall one of the main reasons for purchasing the same was that Myers could procure licenses for said trucks under the six per cent gross receipts tax and thereby save on the license tags for the equipment it was then operating in the transportation of lumber and other commodities; that another reason for acquiring the certificate was for the purpose of moving household goods.

"4.   That from 9 February 1960 to 8 March 1962, the date of the hearing, petitioner Myers had not moved any household goods, had neither purchased, acquired nor leased any truck for the purpose of moving household goods, although Mr. Myers stated that he had one in mind that he could lease if and when it was needed; that Myers never advertised to the public that it was in the business of moving, or in a position to move, household goods; that, although Myers was listed in the telephone directory, this listing did not show that it was a mover of household goods; that the only movement which Mr. Myers contended had been made under this authority, as hereinabove set out, was a set of scales from a quarry below North Wilkesboro to Bryson City, North Carolina; that at the time of the hearing, Myers had leased its hauling equipment to a private carrier and was not hauling anything; that this is his admitted reason for offering these rights for sale; that there are other certificated movers of household goods in North Wilkesboro and one in Wilkesboro, just across the river."

The Commission concluded:

"In view of the facts, as they were made to appear from the evidence, and of the applicable law, the Commission is of the opinion that the proposed vendor, having never begun operation under this authority, having never acquired suitable equipment necessary to conduct the operation, having never advertised that it was offering the service authorized, had nothing to sell, and therefore the motion should be allowed and the proposed sale and transfer should not be approved."

From the Commission's order, Winston-Salem Bonded Warehouse and Trucking Terminal appealed to the Superior Court of Forsyth County. Myers does not appear to have appealed but did appear by attorney in the Superior Court, which, after hearing, entered the following:

"The Court is of the opinion and finds as a fact that: The Commission erred in basing its order in part on the fact that '. . . no public need has been shown for additional service,' (paragraph 6, page 5 of Commission's order) after refusing to permit applicant (appellant here) to show the existence of need (Record of Utilities Commission Proceeding, page 9). The Court finds as a matter of fact and of law that such ruling by the Commission at the hearing and such finding by the Commission in its order entered pursuant to such hearing were in direct conflict and therefore prejudicial to appellants' rights.

"Accordingly, IT IS THEREFORE ORDERED AND ADJUDG-
ED that this case be remanded to the Utilities Commission for
further proceedings consistent with these findings, such order of
remand being based upon this Court's finding that the error as
herein set out was unjust and unreasonable and clearly erroneous."

From the foregoing order, the protestants appealed to this Court.

*York, Boyd & Flynn by A. W. Flynn, Jr., for protestants, appellants.*
*No counsel contra.*

HIGGINS, J. The superior Court held the Commission had commit-
ted error in refusing to approve the transfer of Certificate No. 716.
The alleged error consisted in the refusal to permit the applicants to
introduce evidence tending to establish a convenience and necessity
for the contemplated service. At the time the Commission observed
that the issue of convenience and necessity had been passed on when
the certificate was issued. Counsel thereafter did not offer evidence
but agreed that issue was not then open. The controversy, therefore,
involved the question whether the rights under the certificate had be-
come dormant for failure of Myers to exercise them or to make any
preparation to do so.

The evidence diclosed that on February 9, 1960, Myers, with the
Commission's approval, purchased from Bumgarner and Hall the
active operating authority to transfer household goods as contemplated
by common carrier certificate No. C-716. For more than two years
thereafter Myers did not attempt to carry any household goods but
continued under other authority to carry lumber. However, before the
attempt to sell to the Bonded Warehouse, Myers had leased all its
lumber hauling equipment and had given up all transportation busi-
ness. Hence, by transferring an unused certificate of authority which
had been gathering dust for more than two years, Myers had op-
portunity to pick up $2,200.00.

Implicit in the Commission's approval of the transfer from Bum-
garner and Hall to Myers was the public duty on the part of the trans-
feree to render the service called for in the certificate. *Hough-Wylie
v. Lucas,* 236 N.C. 90, 72 S.E. 2d 11. The Truck Act of 1947 and the
amendments placed upon the Commission the responsibility of requir-
ing the holder of the certificate to render the service contemplated.
A substantial rather than a simulated performance is required to sup-
port a *bona fide* carrier operation. *Utilities Com. v. Motor Express,*
232 N.C. 174, 59 S.E. 2d 578.        ;

The orders of the Utilities Commission are presumed to be valid. Its findings of fact will not be disturbed if supported by substantial evidence. *Utilities Com. v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201; *Utilities Com. v. Coach Co.,* 218 N.C. 233, 10 S.E. 2d 824. Findings so supported are binding on the Superior Court. They are no less binding here. The Commission's findings and conclusions are supported by the record. They fully warrant the Commission in refusing to approve the transfer requested in the petitioners' application. In remanding the cause to the Commission for further hearing the trial court committed error. The judgment is

Reversed.